# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7233 | **DATE** | 9/9/2004 |
| **CASE TITLE** | Native American Arts vs. Hartford Casualty Ins (03 C 7233) Native American Arts vs. Hartford Casualty Ins (03 C 7234) | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 9/23/2004 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Ruling held.  **ENTER MEMORANDUM OPINION:** Native American Art's motions (Docs 18-1, 26-1 & 30-1 in 03 C 7233; and 19-1, 20-1, 21-1, 27-1, 29-1, 37-1 & 41-1 in 03 C 7234) for partial summary judgment are denied.  Defendants' motions (Docs 19-1 & 21-1 in 03 C 7233; and 23-1 & 31-1 in 03 C 7234) for partial summary judgment are granted.  All other pending motions in both cases are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | | | |
|---|---|---|---|---|---|---|---|
| | No notices required. | | | | number of notices | | **Document Number** |
| | Notices mailed by judge's staff. | | | | | | |
| | Notified counsel by telephone. | | | SEP 10 2004 | date docketed | | 43 |
| ✓ | Docketing to mail notices. | | | | docketing deputy initials | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | | | | |
| | Copy to judge/magistrate judge. | | CLERK | | | | |
| | | courtroom | 2004 SEP -9 PM 5: 14 | | date mailed notice | | |
| | SCT | deputy's initials | | | | | |
| | | | Date/time received in central Clerk's Office | | mailing deputy initials | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
SEP 0 9 2004

| | |
|---|---|
| NATIVE AMERICAN ARTS, INC., an Illinois corporation, as the assignee of Bloom Brothers, a division of Stravina Operating Company, L.L.C., ) ) ) ) Plaintiff, ) vs. ) | 03 C 7233 |
| HARTFORD CASUALTY INSURANCE COMPANY, an Indiana corporation; HARTFORD INSURANCE COMPANY OF THE MIDWEST, an Indiana corporation; and GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation, ) ) ) ) ) Defendants. ) | |

NATIVE AMERICAN ARTS, INC., an Illinois )
corporation, as the assignee of Stravina Operating L.L.C., )
d/b/a Artistic Impressions, )
                                          Plaintiff,          )
                vs.                                           )          03 C 7234
HARTFORD CASUALTY INSURANCE COMPANY,          )
an Indiana corporation; HARTFORD INSURANCE          )
COMPANY OF THE MIDWEST, an Indiana          )
corporation; and GREAT AMERICAN INSURANCE          )
COMPANY, an Ohio corporation,          )
                                          Defendants.          )

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the parties' cross-motions for partial

summary judgment. For the reasons set for below, Plaintiff's motion is denied and

Defendants' motions are granted.

## BACKGROUND

Plaintiff Native American Arts, Inc. ("NAA") is an Illinois based and incorporated company that is engaged in the business of selling Indian-made arts, crafts, and jewelry. NAA is wholly owned by Indians. In 2001, NAA filed two lawsuits in this district that ultimately named as defendants various subsidiaries of Stravina Operating Company, LLC ("Stravina").[1] NAA alleged in both the AI and BB Litigation that Stravina-owned companies were liable under the Indian Arts and Crafts Act of 1990, 25 U.S.C. § 305 *et seq.* ("IACA"). The IACA authorizes certain Indian groups to bring civil actions against any person who "directly or indirectly offers or displays for sale or sells a good . . . in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization . . .." 25 U.S.C. § 305e(a). In both the AI and BB Litigation, NAA contended that Stravina-owned companies engaged in the marketing, advertising, display, and sale of arts and crafts products that falsely suggested that the products were made by Indians.

---

[1] The first of these two lawsuits (01 C 1618) was filed on March 7, 2001 and eventually named Stravina subsidiary Artistic Impressions LLC ("AI") as a defendant (the "AI Litigation"). The second suit (01 C 5716) was filed on July 24, 2001, and eventually named Stravina subsidiary Bloom Brothers ("BB") as a defendant (the "BB Litigation").

In late August 2003, NAA and Stravina executed settlement agreements, effectively ending both the AI and BB Litigation (the "AI and BB Settlements"). Under each of these settlement agreements, Stravina agreed to pay NAA $150,000 and a "settlement value" of $3,000,000 for the assignment to NAA of Stravina's claims against its insurers. The insurance companies identified in the AI and BB Settlements are Defendants Hartford Casualty Insurance Company ("Hartford Casualty"), Hartford Insurance Company of the Midwest ("Hartford Insurance"), and Great American Insurance Company ("Great American") (collectively "Defendants").[2] Among the insurance policies that Stravina purchased from Defendants was coverage for "advertising injury."

On October 14, 2004, NAA filed two separate actions – with both lawsuits naming Hartford and Great American as defendants – in its capacity as an assignee of Stravina's rights and claims against the Defendants, which NAA obtained through the AI and BB Settlements. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. In both of these present actions, which have been consolidated

---

[2] Hartford Casualty and Hartford Insurance are both Indiana corporations based in Connecticut. We may refer to the two companies collectively as "Hartford." Great American is an Ohio corporation based in Ohio.

before this court,[3] NAA alleges (1) that Defendants have breached their duties to defend and indemnify Stravina for its losses resulting from the AI and BB Litigation and (2) that Defendants' purported failure to defend and indemnify Stravina constituted bad faith conduct. All Defendants assert as defenses that they have no duty or obligation to defend or indemnify Stravina stemming from the AI and BB Litigation, and Great American additionally seeks a declaratory judgment that no such duty exists.

At the request of all parties, we agreed to bifurcate the present litigation into two phases, with the first phase addressing Defendants' duty to defend Stravina and the second phase addressing their duty to indemnify. We are currently at the first phase, as all parties have filed motions for partial summary judgment concerning Defendants' duty to defend. The parties are in agreement that the duty to defend issue can be resolved via the present motions.

### LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On summary judgment the moving party must identify "those portions

---

[3] Cases 03 C 7233 (stemming from the BB Litigation) and 03 C 7234 (AI Litigation) will be collectively referred to as the "present litigation" and both cases will be addressed in this opinion.

of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the nonmoving party's case." Id. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. Id. at 255; Bay v. Cassens Transport Corp., 212 F.3d 969, 972 (7th Cir. 2000).

When parties file cross-motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other. M. Snower & Co. v. United States, 140 F.2d 367, 369 (7th Cir. 1944). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter

of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. Miller v. LeSea Broadcasting, Inc., 87 F.3d 224, 230 (7th Cir. 1996). With these considerations in mind, we now turn to the parties' motions.

## DISCUSSION

### 1. Choice of Law

In their briefing papers, NAA and Defendants vigorously contest which state's law should be applied for the present litigation. NAA favors Illinois law while Defendants prefer California law. The parties are in accord that because this action is based on diversity jurisdiction, the choice of law principles of the forum state, Illinois, should apply. See Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 873 (7th Cir. 2000). They further aver that Illinois choice of law analysis for cases involving insurance policy interpretation mandates the balancing of six factors enunciated by the Illinois Supreme Court in Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co., 665 N.E.2d 842, 845 (Ill. 1995).[4] While NAA and Defendants each proffer various reasons

---

[4] A Lapham-Hickey analysis is only required where, as in the present litigation, the insurance policy in question does not contain a choice of law provision. The six Lapham-Hickey factors are (1) location of the policy's subject matter, (2) place of the policy's delivery, (3) the domicile of the insured and insurer, (4) the place of the last act giving rise to a valid contract, (5) location of performance, and (6) any other place bearing a rational relationship to the general contract. Id. at 845.

why the <u>Lapham-Hickey</u> factors tilt in their favor, their own admissions support the conclusion that we need not decide the choice of law issue at this phase of the present litigation. This is because courts should first determine whether applying two states' laws would produce different results before engaging in a choice of law analysis. <u>Jean v. Dugan</u>, 20 F.3d 255, 260 (7th Cir. 1994).

As indicated by the parties, key differences exist between California and Illinois law when it comes to the ramifications of an insurer's breach of its duty to defend, especially consequences concerning indemnification after a duty to defend has been established. However, none of the parties identify, nor does our own research indicate, a meaningful disparity between Illinois and California law concerning the actual issue at dispute in these motions, namely whether Defendants have a duty to defend under the relevant policies. Since the parties agreed that the present litigation should be bifurcated into duty to defend and duty to indemnify phases (and given the heavily contested facts concerning certain <u>Lapham-Hickey</u> factors), we feel that it would be premature to unnecessarily decide the potentially outcome-determinative choice of law issue at this stage of the case.

Our decision not to decide the choice of law question is supported by Judge Gottschall's approach in <u>Flodine v. State Farm Ins. Co.</u>, 2001 WL 204786, **4-5 (N.D. Ill. 2001), a case cited by both NAA and Defendants as factually and procedurally

similar to the present litigation. Flodine involved NAA being the assignee of a company that it had sued under the IACA for selling items that were falsely suggested as being produced by Indians. The case concerned whether the defendant insurance company had a duty to defend and indemnify the company accused by NAA of violating the IACA. As with our case, the Flodine parties agreed that the litigation should be bifurcated into duty to defend and duty to indemnify phases. At the first stage (judgment on the pleadings), Judge Gottschall determined that because applying the law of the two states in question would yield the same result as to the insurer's duty to defend, it would be prudent to reserve judgment on the choice of law issue until it really made a difference, the second stage of the litigation. Id.

Because we find that there is no material conflict between Illinois and California law regarding an insurer's duty to defend, we will apply the law of the forum state, Illinois, at this stage in the litigation. Jean v. Dugan, 20 F.3d at 260.

## 2. Duty to Defend

Construing the provisions of an insurance policy and determining the rights and obligations thereunder are questions of law that can be disposed by the court through summary judgment. Crum & Forster Managers Corp. v. Resolution Trust Corp., 620 N.E.2d 1073, 1077 (Ill. 1993). When the words in the policy are unambiguous, we will afford them their plain and ordinary meaning and will not search for ambiguity where

there is none. Id. at 1078. Unambiguous terms will be applied as written. Id. However, when an insurance policy provision is found to be ambiguous – subject to more than one reasonable interpretation – all doubts and ambiguities must be resolved in favor of the insured. U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co., 578 N.E.2d 926, 930 (Ill. 1991).

To determine whether an insurer has a duty to defend its insured (a duty that is much broader than its duty to indemnify) "the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy." Crum & Forster, 620 N.E.2d at 1079. If the facts alleged in the underlying complaint fall within, or potentially within, the coverage provisions of the policy, the insurer's duty to defend the insured in the underlying action is triggered. Id. For complaints that contain several theories or causes of action, the insurer's duty to defend arises as long one of the theories falls within the policy's coverage, even if the remaining theories do not. Int'l Ins. Co. v. Rollprint Packaging Products, Inc., 728 N.E.2d 680, 692 (Ill. App. Ct. 2000). We must construe the allegations in the underlying complaint liberally, and any doubt as to coverage will be resolved in favor of the insured. Illinois State Medical Ins. Services, Inc. v. Cichon, 629 N.E.2d 822, 826 (Ill. App. Ct. 1994). At the same time, the insured carries the burden of proving that its loss falls within the terms of its policy. St. Michael's Orthodox Catholic

Church v. Preferred Risk Mut. Ins. Co., 496 N.E.2d 1176, 1178 (Ill. App. Ct. 1986). If the insured meets this burden, the insurer must then "prove the applicability of an exception in the coverage if it wishes to escape liability." Id.

**2(a). The Hartford Insurance Primary Policies**

For the period in question, Stravina purchased three one-year primary insurance polices from Hartford Insurance (the "99-00, 00-01, and 01-03 Primary Policies") and two one-year umbrella policies from Hartford Casualty (the "99-00 and 01-02 Umbrella Policies"). All three Primary Policies provide coverage, including a duty to defend, for "[a]dvertising injury' caused by an 'advertisement' of [the insured's] goods, products, or services . . . committed . . . during the policy period." In the 99-00 and 00-01 Primary Policies, "advertising injury" is defined as "injury arising out of one or more of the following offenses," which includes "[c]opying, in your 'advertisement,' a person's or organization's 'advertising idea' or style of 'advertisement.'" The slightly different definition of "advertising injury" in the 01-03 Primary Policy includes "[c]opying, in your 'advertisement,' or on 'your website,' a person's or organization's 'advertising idea' or style of 'advertisement.'" In all Primary Policies, "advertising idea" is defined as "any idea for an 'advertisement,'" with one of the definitions for "advertisement" being "[a]ny other publication that is given widespread distribution."[5]

---

[5] There are other differences between the 99-00/00-01 and 01-03 Primary Policies in terms of their definitions of "advertising" and "advertising injury." (continued...)

NAA contends that Hartford's duty to defend is implicated because the AI and BB complaints[6] adequately allege "advertising injury" as the term is defined in the Primary Policies. Specifically, NAA argues that the AI and BB complaints contain allegations that Stravina-owned companies copied NAA's advertising ideas and style of advertisement. After examining the allegations of the AI and BB complaints – reading them liberally in the insured's favor – and comparing them to the relevant definitions in the Primary Policies, we agree with NAA.

To begin, the AI and BB complaints contain allegations of "advertisements" on the part of Stravina-owned businesses. The AI and BB complaints respectively point to advertising which includes "the distribution of catalogues and brochures" as well as the "nationwide dissemination of catalogues, brochures, and sales literature." These allegations squarely fit within the Primary Policies' definition of "advertising" as "[a]ny other publication that is given widespread public distribution."

Further review of the AI and BB complaints shows that they charge that Stravina-owned businesses "misappropriat[ed . . . NAA's] advertising ideas and style

———————————————

[5] (...continued)
However, these variations are not material for the purposes of deciding the present motions.

[6] The "AI and BB complaints" refers to the most recently amended complaints in the AI and BB Litigation at the time the cases were settled.

-11-

of doing business." The complaints allege that the Stravina subsidiaries used a similar style of advertising as NAA when they advertised Indian style goods in a manner suggesting that they were Indian products or produced by Indians. Because NAA is in the business of selling actual Indian-made goods and stresses the authenticity of its wares, its advertising emphasizes the Indian origin of its products. For this reason, the AI and BB complaints allege that NAA suffered competitive advertising injuries when Stravina companies falsely used the concept of authentic Indian products in the advertising of their goods. Since we must construe the complaints and the terms of the policies liberally and in NAA's favor, we find that the AI and BB complaints sufficiently allege "advertising injury" as defined in the Hartford Insurance Primary Policies. This conclusion is in accord with Flodine where, after a thorough analysis, Judge Gottschall determined that NAA's underlying complaint against a company that advertised goods in a manner that falsely suggested that they were Indian made did allege "advertising injury" as defined in the relevant insurance policies. Flodine, 2001 WL 204786 at **6-10.[7]

_____

    [7] The Flodine insurance policies defined "advertising injury" as "misappropriation of advertising idea," which we view as functionally equivalent to the Primary Policies' definition as "[c]opying . . . [an] 'advertising idea' or style of 'advertisement.'"

However, this preliminary finding that the AI and BB complaints contained allegations of "advertising injury" within the meanings of the Primary Policies does not end our inquiry into whether a duty to defend arises thereunder. This is because, unlike the case in Flodine, the Primary Polices contain key exclusions that impact claims made as a result of IACA driven litigation. The 99-00 and 00-01 Primary Policies include the following exclusion: "This insurance does not apply to . . . 'Advertising injury' arising out of . . . Infringement of trademark, trade name, service mark or other designation of origin or authenticity." The 01-03 Primary Policy contains a similar provision: "This insurance does not apply to . . . 'Personal and advertising injury' . . . Arising out of any violation of any intellectual property rights, such as patent, trade secret, trademark, trade name, service mark or other designation of origin or authenticity."

In the AI and BB complaints, NAA's claims against the Stravina-owned defendants were all brought pursuant to the IACA. The IACA allows for actions to be brought "against a person who, directly or indirectly, offers or displays for sale or sells a good...in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization . . .." 25 U.S.C. § 305e(a). In a detailed opinion construing the constitutionality of the IACA, Judge Shadur found that "the statute directly addresses

-13-

false and misleading speech that *misrepresents authenticity* . . . [the IACA] requires some products to contain affirmative *representations about their origin* to avoid creating a 'false suggestion'" that they were truly Indian products. <u>Native American Arts, Inc. v. Bundy-Howard, Inc.</u>, 168 F. Supp. 2d. 905, 911 (emphasis added). In determining that the IACA is not impermissibly vague, Judge Shadur remarked that an entity will not be liable under the IACA unless it makes a false representation as to a product's authenticity or origin. <u>Id.</u>

The AI and BB complaints contain repeated allegations incorporating the IACA's language that charge that the Stravina-sold products in question "falsely suggested" to be "Indian product[s], Indian produced, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization." In general, the complaints claim that the Stravina defendants are liable under the IACA for marketing and selling fake Indian goods as real ones. Such contentions naturally implicate that the products in question did not come from a true Indian source. The paragraphs in the AI and BB complaints that allege "advertising injuries"[8] note that NAA advertises its products as "authentic" Indian products while the Stravina-owned companies' advertisements "falsely suggest" an Indian origin or vintage.

---

[8] Paragraphs 58 and 26 of the AI and BB complaints respectively allege "competitive injuries" as a result of the Stravina-owned companies' advertising.

The Primary Policies exclude coverage for advertising injuries arising out of "designation of origin or authenticity." We hold that these terms are unambiguous and we must afford them their plain and ordinary meaning.[9] Crum & Forster, 620 N.E.2d at 1077. Accordingly we find that NAA's IACA allegations in the AI and BB complaints – and for that matter any allegation of liability under the IACA – clearly arise out of purportedly false representations as to the authenticity or origin of the Indian-styled goods in question. As such, the allegations in the AI and BB complaints squarely fall within the Primary Policies' exclusions for advertising injuries stemming from "designation of origin or authenticity" to which the insurance (including any duty to defend) does not apply.

NAA argues that this advertising injury exclusion should not be effectuated because it was not meant to apply beyond trademarks. Citing a Fourth Circuit opinion where the court described a similarly worded Hartford insurance policy exclusion as a "trademark exclusion," Superperformance Int'l, Inc. v. Hartford Casualty Ins. Co., 332 F.3d 215, 222 (4th Cir. 2003), NAA contends that the Primary Policy exclusion in question was meant solely to apply to advertising injuries stemming from trademark

_____

[9] Random House Webster's College Dictionary (1991) defines "origin" as "something from which anything arises or is derived . . . rise or derivation from a particular source." Webster's Third New International Dictionary (1981) defines "authenticity" as "the quality of being authentic . . . authoritative, valid, true, real, or genuine."

violations. NAA attempts to bolster this argument by pointing to language of the Lanham Act, 25 U.S.C. § 1125(a), which refers to prohibitive uses of "any false designation of origin" to claim that the Primary Policy exclusions should be limited to covering trademark violations.

While we agree with NAA that these Primary Policy "designation of origin or authenticity" exclusions do apply to trademark violations, we do not believe that the exclusions are so narrowly worded as to not include allegations stemming from the IACA. To begin, the plain wording of the exclusions offers no indication that they were meant to be limited to only trademark cases, with the 01-03 exclusion specifically referencing patents and trade secrets. More importantly, the similarity in wording and purposes behind the Lanham Act and the IACA discredit NAA's theory that the exclusion only encompasses trademarks. As Judge Gottschall reasoned in <u>Flodine</u>:

> [The plaintiff (NAA) correctly argues] that the claims in the underlying complaint are analogous to claims for trademark or trade dress infringement. The IACA protects Indian sellers of arts and crafts by preventing non-Indians from exploiting the market value and goodwill associated with authentic, Indian-made products . . . As Judge Manning observed in a case similar to the underlying [litigation], the IACA's "falsely suggests" clause "was intended to be construed as parallel and analogous to the Lanham Act . . . which 'prohibits any person from affixing, applying, annexing, or using words or other symbols which tend falsely to describe or represent a false designation or [sic] origin.'" <u>Native Am. Arts, Inc. et al v. Vill. Originals, Inc.</u>, 25 F. Supp. 2d 876, 881 (N.D. Ill. 1998).

<u>Flodine</u>, 2001 WL 204786 at *6. Given the fact that the IACA was designed to incorporate key principles from the Lanham Act in order to achieve congruous ends, we see no reason to read the Primary Policies' exclusions as solely applicable to trademarks simply because they specifically mention trademarks (as opposed to referencing the IACA by name) and incorporate language from the Lanham Act.[10] Accordingly, Hartford Insurance has no duty or obligation to defend under the Primary Policies.

## 2(b). The Hartford Casualty Umbrella Policies

Hartford Casualty issued to Stravina two umbrella liability policies (the "99-00 and 01-02 Umbrella Policies") that provided coverage for damages resulting from "advertising injury" that are in excess of the coverage provided by the "underlying insurance." The "underlying insurance" referred to in the 99-00 and 01-02 Umbrella Policies are respectively the 99-00 and 01-03 Hartford Insurance Primary Policies. However, both Umbrella Policies state that they do not apply for "advertising injury" unless the "'underlying insurance' is applicable to" the "advertising injury." Because

---

[10] NAA also cites <u>Specific Impulse, Inc. v. Hartford Casualty Ins. Co.</u>, 2002 WL 32052699 (N.D. Cal. 2002), for the proposition that a similarly worded exclusion in a Hartford policy was intended to cover solely trademark-related advertising injuries. However, the <u>Specific Impulse</u> court held only that the exclusion did not apply to copyright violations and made no ruling concerning the IACA or whether the exclusion could be applied only to trademark claims. <u>Id.</u> at **6-7.

we have already determined that the Primary Policies do not provide coverage for the AI and BB Litigation, there is no coverage or duty to defend under the Umbrella Policies.

**2(c). The Great American Umbrella Policy**

Great American issued a commercial excess liability umbrella policy (the "Great American Policy") to Stravina that covered the period from November 22, 2000, through November 22, 2001. The Great American Policy provides coverage for "advertising injury" and mandates a duty to defend when one of the two following conditions are met:

> 1. [T]he applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to [Stravina] have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies; or
> 2. [D]amages are sought for any "occurrence" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to [Stravina.]

The "Schedule of Underlying Insurance" referred to above in the Great American Policy names the Hartford Insurance 00-01 Primary Policy as an "underlying policy."

NAA and Great American debate whether the first prong of the Great American Policy's duty to defend provision has been satisfied by Stravina's settlement with NAA in the AI and BB Litigation, namely whether the settlements constituted an exhaustion

-18-

of the 00-01 Primary Policy's limits through "actual payment of 'claims.'" They also argue whether we should utilize California or Illinois law in making such a determination. However, we need not decide the Primary Policy exhaustion question because both prongs of the Great American Policy's duty to defend provision require an "occurrence" that is covered under the Great American Policy. If the underlying occurrence or event is not covered under the Great American Policy, Great American's duty to defend is not triggered, regardless of whether the limits of the Primary Policy have been exhausted.

The Great American Policy contains the following exclusion:

> This insurance does not apply to...Any liability imposed by law, or assumed by any "insured" under an "insured contract," because of "advertising injury," except to the extent that such insurance is provided by a policy listed in the Schedule of "Underlying Insurance" and for no broader coverage than is provided by such coverage.

NAA admits that under this "following form" provision, the Great American Policy "will provide no broader coverage for advertising injury than is provided by the Hartford's [00-01] primary policy." As discussed above, the 00-01 Hartford Primary Policy does not provide coverage for advertising injury resulting from the AI and BB Litigation due to the policy's exclusion for injuries resulting from designations of origin or authenticity. Since the Hartford Primary Policy provides narrower coverage (no coverage, the narrowest amount possible) by way of this exclusion, the Hartford

-19-

exclusion applies to the Great American Policy and Great American therefore has no duty to defend stemming from the AI and BB Litigation. While NAA argues that it would be unfair and prejudicial to allow Great American to "pick, choose, and combine words and definitions" from the Hartford and Great American Policies, the wording of the Great American Policy is clear that when the underlying policy denies coverage, the umbrella policy will "follow form" and deny coverage as well.

## CONCLUSION

Based on the foregoing analysis, NAA's motion for partial summary judgment is denied and Defendants' motions for partial summary judgment are granted.


Charles P. Kocoras
Chief Judge
United States District Court

Dated: SEP - 9 2004